**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| LAURENCE ZIFF, individually, and THE ZIFF AGENCY, LLC,<br>   *Plaintiffs*,<br><br>v.<br><br>ALLIANZ GLOBAL RISKS US INSURANCE COMPANY f/k/a FIREMAN'S FUND INSURANCE COMPANY<br><br>   *Defendant*. | Civil Action No. 24-10529<br><br>**OPINION**<br><br>September 23, 2025 |

**SEMPER**, District Judge.

The current matter comes before the Court on Defendant's Allianz Global Risks US Insurance Company f/k/a Fireman's Fund Insurance Company ("Defendant") motion to dismiss Laurence Ziff and The Ziff Agency's (together, "Plaintiffs") Amended Complaint (ECF 13, "FAC"). (ECF 15, "Def. Mot.") Plaintiffs opposed the motion. (ECF 17, "Opp.") Defendant filed a reply. (ECF 20, "Reply.") The Court has decided this motion upon the submissions of the parties, without oral argument, pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons stated below, Defendant's motion to dismiss is **GRANTED**.

### I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

This suit arises from a dispute regarding the Defendant's denial of insurance coverage after Plaintiffs had been sued in New Jersey state court for allegedly defamatory statement ("Plotkin

---

[1] The facts and procedural history are drawn from the Amended Complaint (ECF 13) and documents integral to or relied upon by the Complaint. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). When reviewing a motion to dismiss, the Court accepts as true all well-pleaded facts in Plaintiff's Complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203,

Lawsuit"). Plaintiff Laurence Ziff is an insurance broker, and Plaintiff Ziff Agency is an insurance brokerage firm. (FAC ¶¶ 4-5.) Defendant is an insurance company. (*Id*. ¶ 3.)

Plaintiffs purchased several insurance policies from Defendant. (*Id*. ¶ 7.) The policy at issue in this case, USF00604420001 (the "Policy") was in effect for two years: from January 1, 2020 to January 1, 2021, which Plaintiff then renewed until January 1, 2022. (*Id*.) The Policy provided Plaintiffs with "Company Sponsored Life Insurance Agents Errors and Omissions Liability Coverage" on claims made and on a reported basis. (*Id*. ¶ 8.) The Policy limited claims to $1,000,000. (*Id*.) The relevant portions of the policy include:

> A.1. <u>Agents Errors and Omissions Liability</u> We will pay on the Agent's behalf all Loss which such Agent is legally obligated to pay as a result of a Claim first made against such Agent or its Agency/Agency Staff and reported to Us during the Policy Period in accordance with Section VI. Conditions I.2., provided that such Claim is for a Wrongful Act in the rendering of or failure to render Professional Services in connection with a Covered Product if that Wrongful Act occurs wholly after the Retroactive Date.
>
> N. Professional Services means the following services rendered in connection with a Covered Product by the Agent or its Agency/Agency Staff to a Client in the conduct of such Agent's profession as a Life or Accident and Health Insurance agent, General Agent or Broker, or Notary Public, so long as such Agent is properly licensed to render such services on any date on which a Wrongful Act involving such services is alleged to have occurred:
>
>> Providing advice or consulting solely related to a Covered Product, including financial planning or consulting solely related to a Covered Product; but not including any advice or recommendation to, in any way, sell, convert, surrender, or alter a Covered Product, in order to acquire or invest in anything other than a Covered Product.

(*Id*. ¶¶ 9-11.)

---

210 (3d Cir. 2009). Additionally, a district court may consider "exhibits attached to the complaint and matters of public record" as well as "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

Plaintiffs now claim coverage under that Policy in relation to a lawsuit filed against them in New Jersey state court. On January 16, 2020, David Plotkin and Richard Urbealis, two business partners, sued Plaintiffs among others in the Superior Court of New Jersey, Bergen County claiming that Laurence Ziff had made defamatory comments about Richard Urbealis while advising Plaintiff Ziff's client and Plotkin's friend, Jeff Kurtz ("the Plotkin Lawsuit"). (*See* ECF 15-4, "Ex. B" ¶ 1.) Plotkin and Urbealis were soliciting life insurance policies from Kurtz. (*Id.* ¶¶ 18-19.) Plaintiff Ziff was brought into a meeting with Plotkin and Kurtz in his role as an insurance broker to advise and provide financing to Kurtz in connection with his purchase of life insurance policies from Plotkin. (*Id.* ¶ 61.) In that meeting, Plaintiff Ziff allegedly made disparaging statements about Urbealis and his business practices.[2] (*Id.* ¶ 62.)

Plaintiff Ziff made a written demand to Defendant for Defendant to provide insurance coverage for the claims against him in the Plotkin Lawsuit. (FAC ¶ 26.) On January 19, 2022, Defendant disclaimed coverage to Plaintiffs based on Exclusions K and R of the Policy, as well as the "Amendment of Dishonesty Exclusion Endorsements" to Exclusion A. (*Id.* ¶ 27.) Exclusion K provides that Defendant shall not be liable to make payment for a loss in connection with any claim "[b]ased upon, arising out of:

1. The collection, payment or return of, or the failure to collect, pay or return, any commission fee, tax or premium;

2. Any dispute with another insurance agent or broker, including but not limited to, any dispute concerning commissions, fees, client lists, or entitlements; or

---

[2] The Plotkin Lawsuit alleges that during this meeting, Plaintiff Ziff said to Plotkin in the presence of Kurtz that Urbealis "had a lot of lawsuits against him" and that "he operated like a criminal" and a "crook." (Ex. B. ¶ 62.) It further alleges that Ziff stated to Plotkin, in the presence of Kurtz, that Plotkin "might want to rethink who he is doing business with" and that "Urbealis operates under the table" and "does not do things above board." (*Id.*)

3

      3. Any commingling, misappropriation or conversion of Client funds."

(ECF 15-3, "Ex. A" at 8.)

      Plaintiffs filed their original complaint on October 9, 2024 in state court alleging Declaratory Judgment (Count 1) and Breach of Contract (Count 2) related to their insurance agreements with Defendant. (FAC ¶¶ 22-25.) Plaintiffs alleged that Defendant should have defended and indemnified them in the Plotkin Lawsuit under the Policy. (*Id.* ¶ 26.) Defendant timely removed this action to federal court on November 15, 2024. (ECF 1, "Removal"). Plaintiffs filed an Amended Complaint on January 22, 2025, which added new factual allegations but did not add to or otherwise modify the causes of action. (FAC ¶¶ 12-27, 29-39). Defendant now moves to dismiss the Amended Complaint for failure to state a claim upon which relief may be granted under Rule 12(b)(6). (Def. Mot. at 2).

## II.   LEGAL STANDARD

      Federal Rule of Civil Procedure 12(b)(6) permits a defendant to move to dismiss a count for "failure to state a claim upon which relief can be granted[.]" To withstand a 12(b)(6) motion, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is plausible on its face when there is enough factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). As a

result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Id.* at 789.

In evaluating the sufficiency of a complaint, a district court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). A court, however, is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007). If, after viewing the allegations in the complaint most favorably to the plaintiff, it appears that no relief could be granted under any set of facts consistent with the allegations, a court may dismiss the complaint for failure to state a claim. *DeFazio v. Leading Edge Recovery Sols.*, 2010 WL 5146765, at *1 (D.N.J. Dec. 13, 2010).

### III. ANALYSIS

Defendant argues that because Exclusion K applies, Plaintiffs are not entitled to coverage under the Policy, and therefore the Amended Complaint must be dismissed in its entirety. (Def. Mot. at 22.) Plaintiffs argue that they have adequately pled that Exclusion K does not apply. (Opp. at 9.) The Court will address the parties' arguments in turn.

#### A. Exclusion K

Normally, "[w]hen interpreting an insurance policy, courts should give the policy's words their plain, ordinary meaning." *President v. Jenkins,* 853 A.2d 247, 254 (N.J. 2004). "If the policy language is clear, the policy should be interpreted as written." *Nav-Its, Inc. v. Selective Ins. Co. of Am.*, 869 A.2d 929, 933 (N.J. 2005). "If the policy is ambiguous, the policy will be construed in favor of the insured." *Doto v. Russo,* 659 A.2d 1371, 1376 (N.J. 1995). Insurance contracts in New Jersey are considered contracts of adhesion because the parties are usually not similarly

situated. *See Meier v. New Jersey Life Ins. Co.*, A.2d 862, 869 (N.J. 1986).  Because they are adhesion contracts, courts aim to interpret insurance contracts in accordance with the objectively reasonable expectations of the insured.  *Doto,* 659 A.2d at 1376–77.

Exclusionary clauses should be narrowly construed, and the burden is on the insurer to prove that an exclusion applies.  *See American Motorists Ins. Co. v. L–C–A Sales Co.,* 713 A.2d 1007, 1013 (N.J. 1998).  "[I]f there is more than one possible interpretation of the language, courts apply the meaning that supports coverage rather than the one that limits it."  *Flomerfelt v. Cardiello*, 997 A.2d 991, 997 (N.J. 2010).  However, this does not mean that "any far-fetched interpretation of a policy exclusion will be sufficient to create an ambiguity requiring coverage." *Stafford v. T.H.E. Ins. Co.*, 706 A.2d 785, 789 (N.J. Super. Ct. App. Div. 1998). Therefore, an exclusion will be enforced if it is "specific, plain, clear, prominent, and not contrary to public policy."  *Doto,* 659 A.2d at 1378.  "If the words used in an exclusionary clause are clear and unambiguous, a court should not engage in a strained construction to support the imposition of liability."  *Flomerfelt*, 997 A.2d at 996.

The relevant portion of Exclusion K disclaims Defendant, the insurer, from liability for "any claim based upon, arising out of, any dispute with another insurance agent or broker, including but not limited to, any dispute concerning commissions, fees, client lists, or entitlements[.]"  (Ex. A at 8.)  "The phrase 'arising out of' has been defined broadly in other insurance coverage decisions to mean conduct 'originating from,' 'growing out of' or having a 'substantial nexus' with the activity for which coverage is provided."  *American Motorists*, 713 A.2d at 1010.  Under New Jersey law, an insurance agent is "a person authorized, in writing, by any insurance company to act as its agent to solicit, negotiate or effect insurance contracts on its behalf or to collect insurance premiums and who may be authorized to countersign insurance

6

policies on its behalf." N.J. Stat. Ann. § 17:22A–2f.  An insurance broker is "a person who, for a commission, brokerage fee, or other consideration, acts or aids in any manner concerning negotiation, solicitation, or effectuation or insurance contracts as the representative an insured or prospective insured." *Id.* § 17:22A-2g.

Defendant argues that the Plotkin Lawsuit was a dispute between insurance agents and brokers and that therefore Exclusion K must apply.  (Def. Mot. at 1.)  Plaintiffs concede that Plotkin and Urbealis are "insurance agents" but contend that Plotkin and Urbeali "did not sue Plaintiffs as insurance brokers or insurance agents" and "did not act as insurance brokers or insurance agents in the placement of life insurance polices at issue." (Opp. at 1).  But Plaintiffs' argument conflicts with clear language of Exclusion K, which exempts from coverage "any claim based upon, arising out of, ***any*** dispute with another insurance agent or broker[.]"   (Ex. A at 8) (emphasis added).

It appears quite plainly that Exclusion K is applicable here because Plaintiff is an insurance broker and Urbealis and Plotkin are insurance agents, which Plaintiffs themselves concede in their opposition brief.  (*See* Opp. at 1.)  The Plotkin Lawsuit thus was a dispute between insurance agents and brokers as required by the plain language of Exclusion K.  Plaintiffs' argument that Exclusion K should only apply when an insurance agent or broker is the "agent on record" holds no weight.  (*Id*. at 2).  Exclusion K does not contain such a requirement, nor does it contain a provision requiring the insurance agents or brokers to act "in connection with" the insurance policies.  (*Id.*; *see* Ex. A at 8.)

Nevertheless, the record clearly demonstrates that Urbealis and Plotkin were acting as insurance agents when trying to sell life insurance policies to Kurtz.  Plaintiffs themselves plead in the Amended Complaint that "[t]he Plotkin Lawsuit relates to advice Ziff rendered to his client,

7

Jeff Kurtz, in connection with existing life insurance polices that were solicited by David Plotkin and Richard Urbealis." (FAC ¶ 16). Moreover, the complaint in the Plotkin Lawsuit alleges that Plotkin and Urbealis were responsible for structuring and soliciting the life insurance policies that they were trying to sell to Mr. Kurtz, and that they had numerous meetings with him in connection with his purchase of the policies. (Ex. B ¶¶ 18-37). It also alleges that Plotkin and Urbealis received commissions for selling the policy to Kurtz. (*Id*. ¶ 78.) The Court is therefore satisfied that Urbealis and Plotkin were acting as insurance agents during the sale at the center of the dispute.

Plaintiffs finally argues that Exclusion K should be limited to its enumerated provisions on what disputes are excluded, specifically those disputes relating only to "commissions, fees, client lists, or entitlements."[3] (Ex. A at 8.) Plaintiffs assert that the claims in the underlying action could "be asserted by any person" and that "the dispute in the underlying action has no relation to the payment of commissions or fees or client lists or entitlements." (Opp. at 1-2, 6). But the plain language of Exclusion K is not exclusionary and does not support Plaintiffs' proposed limiting principle. The Policy clearly states that it excludes from coverage "any disputes" and contains a clause stating "including but not limited to" before listing examples of disputes, like those concerning commissions, fees, and clients. (Ex. A at 8.) Regardless, Plotkin and Urbealis specifically alleged lost commission, clients, and money in the Ploktin lawsuit, and thus the enumerated list in Exclusion K is in fact applicable in this circumstance. (*See* Ex. B. ¶¶ 78, 80, 83-85, 90.)

---

[3] This provision excludes coverage under the Policy for "[a]ny dispute with another insurance agent or broker, including but not limited to, any dispute concerning commissions, fees, client lists, or entitlements." (Ex. A at 8.)

The language of Exclusion K is unambiguous and applies here. Plaintiffs are therefore not entitled to coverage under the Policy and have failed to state a claim upon which relief may be granted under Rule 12(b)(6).

## IV. CONCLUSION

For the reasons stated above, Defendant's motion to dismiss (ECF 15) is **GRANTED**. A court may dismiss a claim with prejudice when leave to amend would be futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). A finding that leave to amend would be futile is proper when "the complaint, as amended, would fail to state a claim upon which relief could be granted." *In re Egalet Corp. Sec. Litig.*, 340 F. Supp. 3d 479, 514 (E.D. Pa. 2018) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997)). Because Plaintiffs have failed to identify any way in which they would be entitled to coverage under the Plan, amending their complaint for a second time would be futile, and the Court therefore **DISMISSES** the Amended Complaint (ECF 13) **with prejudice**. *See Body Physics v. Nationwide Insurance*, 524 F. Supp. 3d 372, 381 (granting defendant's motion to dismiss and dismissing plaintiffs' complaint in its entirety when an unambiguous insurance policy exclusion applied).

An appropriate order follows.

/s/ Jamel K. Semper
**HON. JAMEL K. SEMPER**
**United States District Judge**

Orig: Clerk
cc: José R. Almonte, U.S.M.J.
    Parties

9